RENÉ H. HIMEL, Judge ad hoc.
Appellant sued as holder and owner of a promissory note signed by appellee, dated Jan. 24, 1957, for $864.00, to the order of General Contract Loan Co., Inc., payable in 18 monthly installments of $48.00 each, beginning Feb. 28, 1957, secured by chattel mortgage on a 1953 Studebaker dump truck. Defendant pleaded the special defense that the truck was voluntarily repossessed by appellant, thereby discharging his obligation.
The trial judge gave written reasons for dismissing plaintiff’s action.
The testimony is conflicting, and the case involves a question of fact only.
*297 General Contract Corporation is a holding company. General Contract Loan Co., Inc., appellant, and Securities Investment Corporation are subsidiaries. All are Missouri corporations.
The testimony of the local managers of these corporations is that they are separate and independent, making separate and distinct loans. Appellant makes all kinds of loans. Securities deals only in the buying of motor vehicle secured notes. They occupy the same building, and share in the rent, gas and light charges. They confer on credit risks and it is clear from the testimony, as a whole, that there is cooperation between the companies. The offices are separated by a small rail partition only.
Defendant testified that he had made 4 or 5 mortgage loans with both companies; that he always made his payments to the two companies by handing his books and payments to the same clerk, who made the entries for both companies and accepted the payments for both.
Defendant owed the note sued upon and a note to Securities Investment secured by mortgage on a 1955 Ford Dump truck, which was in default. This Securities Investment Corporation issued an assignment to its adjuster or collector, Allen Borne, to have defendant pay up or surrender the Ford truck. A week later, it issued another assignment to this collector for the same purpose.
Borne discussed the matter with defendant at about noon. Defendant told him about the note and mortgage on the Studebaker truck and that he would not surrender the Ford truck without surrendering the Studebaker truck also.
He said he had a prospective buyer for the two trucks, and was waiting for the purchaser. He was given until that evening to decide. Borne told defendant that he had nothing to do with the Studebaker. But he took the trouble to call his boss to tell him about the Studebaker truck and that defendant wanted to surrender that also. Without waiting for instructions, according to Borne, when defendant agreed to the surrender of the Ford truck he gave defendant Ex. D-l reading “If the trucks of Michael P. Scamardo are repossessed he will not be liable for any deficiency of balance. 2/27/57. Allen H. Borne.”
Defendant filed no brief in this court. Appellant admits in brief that “there is a conflict in this matter between the witnesses for defendant and plaintiff, but the preponderance of evidence indicates that only one truck was repossessed,” and that was the Ford for Securities Investment.
The Securities Investment Co.’s general manager admitted that Borne had called about Appellant’s mortgage of the Studebaker truck; that he checked appellant’s files and found out about the loan on the Studebaker, but did nothing about it and did not authorize the repossession of the Studebaker. He does not explain why he took the trouble to check appellant’s files on this Studebaker loan.
It is hard to understand why he and Borne bothered about the Studebaker loan and why Borne executed Ex. D-l insofar as it concerned both trucks.
Borne and his friend Bradford testified that they removed the Ford truck from Johnny’s Service Station where it was stored. They said they did not see and did not remove the Studebaker truck.
Carroll Henne, who was working for defendant at that time, testified that he heard the discussion about the surrender of the two trucks and was asked by defendant to go to Johnny’s Service Station to help Borne to take the two trucks away. That when he got to the station there was a driver in the Ford, whom he did not see, who was towing the Studebaker away attached to the Ford truck. It had to be towed because the transmission had been removed. He saw Borne follow in his car.
As we said before, this case involves only a question of fact.
*298 Defendant always made his payments to the two companies to one person.
This was not rebutted.
Borne issued Ex. D-l for the two trucks after talking to his boss.
Two witnesses, Borne and Bradford, testified for plaintiff that the Studebaker was not removed by them. Appellant’s witnesses say that company never received the Sudebaker truck.
Henne testified positively that he saw Borne and another man leave the service station with the two trucks. Borne admitted that defendant insisted that he would not return the Ford without the Studebaker.
The trial Judge saw and heard the witnesses, believed Henne and not Borne and Bradford.
An examination of the record reveals no manifest error in his judgment, and, following the jurisprudence, we are of the opinion that the judgment should be affirmed.
Affirmed.